**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

DAVID LEACRAFT, KATY BAVARO, LYDIA SAIZ, ELIZABETH RIVERA, HANJUSY FRANCO, and T H HALL, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

CANON U.S.A., INC.,

Defendant.

Case No. 2:21-cv-05688-GRB-AYS

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs David Leacraft, Katy Bavaro, Lydia Saiz, Elizabeth Rivera, Hanjusy Franco, and T H Hall ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this class action complaint against Defendant Canon U.S.A., Inc. ("Canon" or "Defendant"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## NATURE OF THE ACTION

1. This is a class action brought on behalf of all persons who purchased Canon "All-in-One" Printers.[1] Throughout its marketing and advertising, including on the product packaging for the All-in-One Printers, Canon claims the All-in-One Printers are multifunction, "all-in-one"

[1] Upon information and belief, the All-in-One Printers at issue include: MAXIFY GX7020, MAXIFY GX6020, PIXMA TS3520, PIXMA G3260, PIXMA G7020, PIXMA G2260, PIXMA MX330, PIXMA MX452, PIXMA MX472, PIXMA TS9520, PIXMA TR8620, PIXMA TS6420, PIXMA TS6320. PIXMA TR4520, PIXMA MG3620, PIXMA MG2522, PIXMA TS3320, PIXMA TS3322, PIXMA TR7020, PIXMA TS9521C, PIXMA TS8320, PIXMA TR8520, PIXMA TR7520, and any and all predecessor models (the "All-in-One Printers"). Plaintiffs reserve the right to amend this list if further investigation and/or discovery reveals that the list should be amended.

devices that can print, copy, scan, and in some cases, fax documents. As opposed to the "single function" printers it sells, Canon calls these multifunction devices a "3-in-1" or "4-in-1" for the fact they purportedly provide three or four functions. In truth, the All-in-One Printers do not scan or fax documents when the devices have low or empty ink cartridges (the "Design Issue"), and Canon's advertising claims are false, misleading, and reasonably likely to deceive the public.

2.      Canon does not represent or warn consumers that ink is a necessary component in order to scan or fax documents.  As a result, consumers are forced to incur unexpected and unnecessary burden and expense in the form of ink purchases or in the alternative be unable to scan or fax documents using the so-called all-in-one device.

3.      Canon knew, or should have known, that its representations and advertisements regarding the All-in-One Printers were false and misleading, and that they failed to disclose material information.

4.      If Plaintiffs knew that the All-in-One Printers suffered from the Design Issue, they would not have purchased an All-in-One Printer on the same terms, if at all.

5.      Purchasers of All-in-One Printers have been harmed as a result of Canon's false representations and omissions.  In addition to monetary damages, Plaintiffs seek injunctive relief requiring Canon to immediately cease the misleading advertising and marketing campaign and engage in a corrective campaign to inform consumers of the use of misleading advertising.

6.      Plaintiffs' claims are brought as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and all other similarly situated persons.  Plaintiffs seek relief in this action individually and on behalf of purchasers of the All-in-One Printers for violations of New York General Business Law §§ 349-350; Texas Deceptive Trade Practices and Consumer Protection Act (Tex. Bus. & Com. Code § 17.41, *et seq*.); California's False

Advertising Law (Business & Professional Code §§ 17500, *et seq*.); California Consumer Legal Remedies Act (Civil Code §§ 1750, *et seq*.); and California Unfair Competition Law (Civil Code §§ 17200, *et seq*.).

**PARTIES**

7. Plaintiff David Leacraft is a resident of Queens, New York. In or about March of 2021, Plaintiff Leacraft purchased a Canon PIXMA MG2522 All-in-One Printer from a Walmart retail store located in East Meadow, New York. Plaintiff Leacraft purchased the Canon PIXMA MG2522 All-in-One Printer to use for its advertised scanning purposes. After purchasing and using the device, he learned that the device does not function as a scanner if the ink cartridges are low or empty. Plaintiff Leacraft suffered injury and was damaged as a result of Canon's conduct at issue. Plaintiff Leacraft would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents. Plaintiff Leacraft may purchase a Canon All-in-One Printer again in the future should Canon continue to advertise a product as all-in-one; he would think it meant Canon fixed the issue.

8. Plaintiff Leacraft attempted a purported "fix" or "workaround" to try getting the scanning feature of the device to work without ink in the device, by pressing and holding the <Stop> button on the all-in-one printer for more than 5 seconds, and then releasing the <Stop> button. This did not resolve the issue and did not allow the scanner to operate without ink in the device.

9. Plaintiff Katy Bavaro is a resident and citizen of the state of Texas. Between 2020 and 2021, Plaintiff Bavaro purchased a Canon PIXMA TS3322 from a Walmart retail store located in Denton, Texas. Plaintiff Bavaro purchased the Canon PIXMA TS3322 All-in-One Printer to use for its advertised scanning purposes. After purchasing and using the device, she

learned that the device does not function as a scanner if the ink cartridges are low or empty. Plaintiff Bavaro suffered injury and was damaged as a result of Canon's conduct at issue. Plaintiff Bavaro would not have purchased the device or would not have paid as much for it had she known that she would have to maintain ink in the device in order to scan documents. Plaintiff Bavaro may purchase a Canon All-in-One Printer again in the future should Canon continue to advertise a product as all-in-one; she would think it meant Canon fixed the issue.

10.     Plaintiff Bavaro attempted a purported "fix" or "workaround" to try getting the scanning feature of the device to work without ink in the device, by pressing and holding the <Stop> button on the all-in-one printer for more than 5 seconds, and then releasing the <Stop> button. This did not resolve the issue and did not allow the scanner to operate without ink in the device.

11.     Plaintiff Lydia Saiz is a resident and citizen of the state of California. In September of 2020, Plaintiff Saiz purchased a Canon PIXMA MG2522 All-in-One Printer from a Walmart retail store located in Chino, California. Plaintiff Saiz purchased the Canon PIXMA MG2522 All-in-One Printer to use for its advertised scanning purposes. After purchasing and using the device, she learned that the device does not function as a scanner if the ink cartridges are low or empty. Plaintiff Saiz suffered injury and was damaged as a result of Canon's conduct at issue. Plaintiff Saiz would not have purchased the device or would not have paid as much for it had she known that she would have to maintain ink in the device in order to scan documents. Plaintiff Saiz may purchase a Canon All-in-One Printer again in the future should Canon continue to advertise a product as all-in-one; she would think it meant Canon fixed the issue.

12.     Plaintiff Saiz attempted a purported "fix" or "workaround" to try getting the scanning feature of the device to work without ink in the device, by pressing and holding the

<Stop> button on the all-in-one printer for more than 5 seconds, and then releasing the <Stop> button. This did not resolve the issue and did not allow the scanner to operate without ink in the device.

13.     Plaintiff Elizabeth Rivera is a resident and citizen of the state of California. In or about 2019, Plaintiff Rivera purchased a Canon PIXMA MG3600 series All-in-One Printer from an Office Depot retail store located in Ventura, California. Plaintiff Rivera purchased the Canon PIXMA MG3600 series All-in-One Printer to use for its advertised scanning purposes. After purchasing and using the device, she learned that the device does not function as a scanner if the ink cartridges are low or empty. Plaintiff Rivera suffered injury and was damaged as a result of Canon's conduct at issue. Plaintiff Rivera would not have purchased the device or would not have paid as much for it had she known that she would have to maintain ink in the device in order to scan documents. Plaintiff Rivera may purchase a Canon All-in-One Printer again in the future should Canon continue to advertise a product as all-in-one; she would think it meant Canon fixed the issue.

14.     Plaintiff Rivera attempted a purported "fix" or "workaround" to try getting the scanning feature of the device to work without ink in the device, by pressing and holding the <Stop> button on the all-in-one printer for more than 5 seconds, and then releasing the <Stop> button. This did not resolve the issue and did not allow the scanner to operate without ink in the device.

15.     Plaintiff Hanjusy Franco is a resident and citizen of the state of California. In October of 2019, Plaintiff Franco purchased a Canon PIXMA MG3620 All-in-One Printer from a Target retail store located California. Plaintiff Franco purchased the Canon PIXMA MG3620 All-in-One Printer to use for its advertised scanning purposes. After purchasing and using the

device, she learned that the device does not function as a scanner if the ink cartridges are low or empty. Plaintiff Franco suffered injury and was damaged as a result of Canon's conduct at issue. Plaintiff Franco would not have purchased the device or would not have paid as much for it had she known that she would have to maintain ink in the device in order to scan documents. Plaintiff Franco may purchase a Canon All-in-One Printer again in the future should Canon continue to advertise a product as all-in-one; she would think it meant Canon fixed the issue.

16.     Plaintiff Franco attempted a purported "fix" or "workaround" to try getting the scanning feature of the device to work without ink in the device, by pressing and holding the <Stop> button on the all-in-one printer for more than 5 seconds, and then releasing the <Stop> button. This did not resolve the issue and did not allow the scanner to operate without ink in the device.

17.     Plaintiff T H Hall is a resident and citizen of the state of California. In or about 2019, Plaintiff Hall purchased a Canon PIXMA MX472 All-in-One Printer from a Walmart retail store located Sacramento, California. Plaintiff Hall purchased the Canon PIXMA MX472 All-in-One Printer to use for its advertised scanning purposes. After purchasing and using the device, he learned that the device does not function as a scanner if the ink cartridges are low or empty. Plaintiff Hall suffered injury and was damaged as a result of Canon's conduct at issue. Plaintiff Hall would not have purchased the device or would not have paid as much for it had he known that he would have to maintain ink in the device in order to scan documents. Plaintiff Hall may purchase a Canon All-in-One Printer again in the future should Canon continue to advertise a product as all-in-one; he would think it meant Canon fixed the issue.

18.     Plaintiff Hall attempted a purported "fix" or "workaround" to try getting the scanning feature of the device to work without ink in the device, by pressing and holding the

<Stop> button on the all-in-one printer for more than 5 seconds, and then releasing the <Stop> button. This did not resolve the issue and did not allow the scanner to operate without ink in the device.

19. Defendant Canon is a New York corporation, with its principal place of business in Melville, New York. Canon is a wholly-owned subsidiary of Canon, Inc., a Japanese corporation, through which it designs, manufactures, and/or distributes consumer electronics products, including the All-in-One Printers at issue as well as ink cartridges for the All-in-One Printers at issue.

20. Through Canon's extensive sales, the public has come to recognize CANON-brand equipment as being of excellent quality and reputation. By reason of their continued and extensive sales, advertising and promotion, CANON-brand equipment, including the All-in-One Printers at issue, enjoy an excellent reputation among the public. Indeed, the CANON mark is a symbol of substantial goodwill among consumers. Accordingly, consumers trust and rely on Canon's marketing and advertising, and reasonably believe that it is truthful and non-deceptive.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from at least one Defendant.

22. This Court has personal jurisdiction over Defendant because Defendant is headquartered in the state of New York, regularly conducts business in this District, and has extensive contacts with this forum.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District, and Defendant transacts substantial business in this District.

## COMMON FACTUAL ALLEGATIONS

### A. Canon's All-in-One Printers

24. For decades, Canon has imported, marketed, distributed, and sold a wide range of printing, photographic, and imaging equipment and related goods bearing the CANON trademark to persons and entities throughout the United States. This equipment includes the All-in-One Printers at issue, and these related goods include CANON-branded ink cartridges for the All-in-One Printers at issue.

25. Canon's All-in-One Printers are devices marketed and sold as having three core functions: printing, copying, and scanning. Certain of the All-in-One Printers have an added fax capability feature.

26. Throughout its marketing and advertising, Canon promotes and promises that the All-in-One Printers provide scanning and faxing as main features and functions. Canon asserts that consumers should pay extra to purchase these multi-function devices over "single function" devices.

27. For example, on its website, Canon explains what consumers should consider and why consumers should purchase a Canon single function printer versus a Canon all-in-one:

> Single function or all-in-one
>
> Do you need your printer for just printing purposes, or will you need it for scanning and copying – maybe even faxing – as well? Single-function printers are exactly what the name suggests: their sole job is to print. Multifunction printers (MFPs) – or All-in-Ones (AIO), 3-in-1-, 4-in-1 – come with scanning and copying capabilities (and, in some cases, faxing). If you anticipate needing these

capabilities down the road, it may be worth paying a little more up front for the increased functionality.[2]

28. At its retail website, www.shop.use.canon.com, Canon provides a "filter by option so consumers can narrow down the number of printers they might wish to consider purchasing. Among these filters that Canon uses is one it calls "CORE FEATURES." These so-called core features to filter by are: (1) Print, (2) Copy, (3) Scan, (4) ADF (auto document feeder), and (5) Fax. Another filter by option Canon provides to consumers looking to purchase a printer is "PRINTER FUNCTIONS." These so-called printer functions to filter by are: (1) Print Only, (2) Print, Copy, Fax, (3) Print, Scan, Copy, and (4) Print, Scan, Copy, Fax.[3]

29. Canon states the functionalities of the All-in-One Printers on the product packaging for each device. For example, on the product packaging of the PIXMA MG2522, Canon represents on each panel of the box that the device functions as a scanner.

[2] *Choosing the Best Home Printer for You*, CANON, https://www.canon.ca/en/Articles/2020/Choosing-Best-Home-Printer-for-You (last visited on October 11, 2021).

[3] *Shop – Home & Office Printers*, CANON, https://shop.usa.canon.com/shop/en/catalog/home-and-office-printers (last visited Oct. 11, 2021).

Canon
PIXMA MG2522
AFFORDABLE INKJET ALL-IN-ONE PRINTER
IMPRESORA MULTIFUNCIONAL DE INYECCIÓN DE TINTA ACCESIBLE
Personal Printer for Home or School
Impresora personal para el hogar o la escuela
Easy To Replace
Ink Cartridges
Cartuchos De Tinta
Fáciles De Reemplazar
GREAT FOR PHOTOS
GENIAL PARA FOTOS
Canon
SAVE THE DATE
JAIME'S 40th
Birthday Bash!!

Canon
PIXMA MG2522
AFFORDABLE INKJET ALL-IN-ONE PRINTER
IMPRESORA MULTIFUNCIONAL DE INYECCIÓN DE TINTA ACCESIBLE
Personal Printer for Home or School
Impresora personal para el hogar o la escuela

Canon
243
Black
244
Color
245
Black
246
Color
245
Black
XL
246
Color
XL
PIXMA MG2522
USB Cable Included
Cable USB Incluido

30.    On its website, Canon makes similar representations that its All-in-One Printers have core features that include scanning and faxing.  For example, on the webpages for various All-in-One Printers, Canon states:

- "Versatile Printing, Copying & Scanning"[4]

- "Simply print, copy, and scan with the PIXMA TS3520 Wireless All-in-One Printer."[5]

- "Whether it's printing documents and reports, or faxing and scanning, the PIXMA TR8620 is the ultimate compact home office printer that's big on performance and productivity."[6]

- "The TR7020 can handle a variety of tasks with ease, from scanning a signed contract with the ADF to printing homework assignments from virtual classrooms."[7]

- "It's made to handle large workloads efficiently from printing, scanning and faxing documents quickly."[8]

31. On Amazon.com, Canon makes similar representations that its All-in-One Printers have core features that include scanning and faxing:

    - Canon PIXMA MG Series All-in-One Color Inkjet Printer - 3-in-1 Print, Scan, and Copy.[9]

---

[4] *Shop - PIXMA TS9520 Wireless,* CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-ts9520-wireless (last visited Oct. 11, 2021).

[5] *Shop - PIXMA TS3520 Wireless All-in-One Printer Black*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-ts3520-wireless-all-in-one-printer-black?gclsrc=aw.ds&gclid=CjwKCAjw3_KIBhA2EiwAaAAlisFs_h5h7n5fG54KfO8UAM038aYR0sIKO2i7kWGYJJBeWfOu1Xb-JxoC81YQAvD_BwE (last visited Oct. 11, 2021).

[6] *Shop - PIXMA TR8620*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-tr8620 (last visited Oct. 11, 2021).

[7] *Shop - PIXMA TR7020 Black*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-tr7020-black (last visited Oct. 11, 2021).

[8] *Shop -PIXMA TR7520 Wireless*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-tr7520-wireless-home-office-all-in-one-printer (last visited Oct. 11, 2021).

[9] *Canon PIXMA MG Series All-in-One Color Inkjet Printer*, AMAZON, https://www.amazon.com/Canon-PIXMA-Color-Inkjet-Printer/dp/B08R3WHWV9/ref=sr_1_1_sspa?dchild=1&keywords=canon+pixma+mg2522&qid=1633961120&sr=8-1-spons&psc=1&spLa=ZW5jcnlwdGVkUXVhbGlmaWVyPUEzSkI1MFFNSVJQWUpMJmVuY3J5cHRlZElkPUExMDE5MTQyMjFEN1Q2R1cxNUhBMSZlbmNyeXB0ZWRBZElkPUEwODc0NjgyMlVQRE9QVk5SUzRPVCZ3aWRnZXROYW1lPXNwX2F0ZiZhY3Rpb249Y2xpY2tSZWRpcmVjdCZkb05vdExvZ0NsaWNrPXRydWU= (last visited Oct. 11, 2021).

- Copy and scan multi-page documents fast and easy with the 35-sheet compact Auto Document Feeder (ADF).[10]
- When you need a home office printer that can handle all your work needs from documents, reports, faxing and scanning to your home needs like printing homework assignments, concert tickets and family photos - the PIXMA TR8520 has you covered.[11]
- Rapid document printing, copying, and scanning and a borderless 4"x6" photo in approximately 45 seconds.[12]

32. Accordingly, two of the core and main functions of the All-in-One Printers are the scan and fax capabilities, and Canon systematically markets and represents that the All-in-One Printers function as scanners and fax machines under all customary and usual circumstances.

## B. The All-in-One Printers Are Packaged and Sold to Purchasers With Scanning and Faxing Capabilities Which are Tied to the Availability of Ink in the Devices

33. The All-in-One Printers do not work as warranted, labeled, and advertised.

34. A document scanner is a device that electronically copies content from printed pages and turns it into a computer file.

---

[10] *Canon TR7020 All-In-One Wireless Printer For Home Use, Black*, AMAZON, https://www.amazon.com/Canon-TR7020-Wireless-Printer-Black/dp/B08FF1JJHT/ref=sr_1_2?dchild=1&keywords=PIXMA+TR7020&qid=1633961310&sr=8-2 (last visited Oct. 11, 2021).

[11] *Canon TR8520 All-In-One Printer For Home Office*, AMAZON, https://www.amazon.com/Canon-Wireless-Printing-Document-AirPrint/dp/B074VFW3VX/ref=sr_1_3?dchild=1&keywords=PIXMA+TR8520&qid=1633961851&sr=8-3 (last visited Oct. 11, 2021).

[12] *Canon PIXMA MX330 Inkjet All-In-One Printer*, AMAZON, https://www.amazon.com/Canon-PIXMA-MX330-Inkjet-Printer/dp/B001R4C5VK (last visited Oct. 11, 2021).

35.     Scanners operate by projecting light at a document being digitized and directing the reflected light through a series of mirrors and lenses onto a photosensitive element.[13]  In most scanners, this sensitive element is an electronic, light-sensing integrated circuit known as a charged coupled device (CCD).[14] Light-sensitive receptors arrayed along the CCD convert levels of brightness into electronic signals that are then processed into a digital image.[15]



Fig. Working of a scanner

36.     Ink is not a necessary component to scan a document.

37.     However, the All-in-One Printers are packaged and sold to purchasers in a manner which requires the devices to contain ink in order to scan documents.  The All-in-One Printers do not function as scanners if the devices have low or empty ink cartridges.

38.     Ink is not a necessary component to fax a document.

39.     However, the All-in-One Printers are packaged and sold to purchasers in a manner which requires the devices to contain ink in order to fax documents.  The All-in-One Printers do not function as fax machines if the devices have low or empty ink cartridges.

---

[13]  *Different Types of Scanners*, ELECTRICALVOICE https://electricalvoice.com/types-of-scanner/ (last visited Oct. 11, 2021).
[14] *Id.*
[15] *Id.*

40.     In other words, if consumers wish to use either of two of the main functions of the device, Canon forces consumers to purchase ink cartridges whether or not they intend to use ink or want to print documents.

41.     As a result, consumers must incur unexpected and unnecessary burden and expense by purchasing ink cartridges, or in the alternative be unable to scan or fax documents using the so-called multifunction, all-in-one device.

42.     Canon fails to disclose to purchasing consumers that the All-in-One Printers suffer from the Design Issue.

43.     Canon has known for years that its representations and advertisements regarding the All-in-One Printers being multifunction devices were false and misleading, and that it fails to disclose material information to consumers.

44.     For example, since at least 2015, consumers have been posting on Canon's Community webpage about their scanners not functioning when their ink cartridges are low or empty.[16]  In January of 2015, the following complaint was posted on the Canon Community webpage: "I have a MX330.  Works great otherwise but if I run out of colour ink or remove an ink cartridge it wont scan.  I'm SCANNING.  why does this affect scanning.  It shouldn't."[17]

45.     In response to the consumer's complaint, a Canon representative replied, "The printer requires that both ink cartridges be installed in the printer in order to scan, even if they are low or out of ink.  In addition, when an error condition is present on the printer (such as being out of ink), other functions of the unit will not be able to be performed until that issue is addressed."[18]

---

[16] *Canon Community - Forums*, CANON, https://community.usa.canon.com/t5/forums/searchpage/tab/message?filter=location&q=scan+without+ink&location=forum-board%3Afaxing&sort_by=-topicPostDate&collapse_discussion=true (last visited Oct. 11, 2021).

[17] *Canon Community - Printer/Multifunction Support*, CANON, https://community.usa.canon.com/t5/Printer-Multifunction-Support/scanner-wont-work-without-all-printer-cartridges-installed/td-p/130650 (last visited Oct. 11, 2021).

[18] *Id.*

46. The Canon Community webpage is replete with similar complaints. One consumer recently posted the following complaint:

one ink empty can't scan

10-29-2020 04:54 PM

The gray ink has run out. There is no place locally that has any. I ordered it online. It is not here yet.
I need to scan something that will not be printed.
When I try the printer will not recognize the computer.
If I try directly on the printer it shuts itself off.
I tried holding STOP. That did nothing.
How can you scan something when the ink is out?
Wasn't there a law suit about this very thing?
Help. Is there anyway to circumvent this.
BTW, I spent a loooong time trying to get this answer from Canon directly. It was insane.

47. Canon replied, stating that the consumer must replace the empty ink tank with a new tank, and that "there is no workaround for this."[19]

SME Patrick
Product Expert
Canon
CANON U.S.A., INC.
Posts: 3,860
Registered: 07-28-2014

Re: one ink empty can't scan

Options ▾

12-02-2020 03:05 PM

Hi rivercook,

The PIXMA MG6320 must have all ink tanks installed in the printer and they must all contain ink in order to use the functions of the printer. Replacing the empty ink tank with a new ink tank will resolve this issue. There is no workaround for this.

48. Canon's competitors do not all engage in this deceptive practice of designing and selling multifunction printers that by default require ink to use the scan and fax features of a multifunction printer. Not all multifunction printers are designed, packaged, and sold to consumers so that low or no ink causes a loss in scan or fax functionality. Not all multifunction

[19] *Canon Community - Printer/Multifunction Support*, CANON, https://community.usa.canon.com/t5/Printer-Multifunction-Support/one-ink-empty-can-t-scan/m-p/323046/highlight/true#M40538 (last visited Oct. 11, 2021).

printers are designed, packaged, and sold to consumers with the scan or fax functionality tied to the level of ink maintained in the device.

49. If Plaintiffs knew that Canon's All-in-One Printers had the Design Issue, they would not have purchased the All-in-One Printers on the same terms, and would have paid less for the All-in-One Printer, if at all.

50. Defendant's false, misleading, and deceptive representations and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

**C. <u>Canon's Design of its All-In-One Printers Produces Increased Ink Sales</u>**

51. There is no legitimate purpose for selling the All-In-One Printers with scanning or faxing functionality that is directly tied to existence or level of ink contained in the devices. Ink is not needed for scanning or faxing functionality. Ink does not improve scanning or faxing performance. Tying the scan or fax capabilities of the All-In-One Printers to ink contained in the devices offers no benefit, and only serves to disadvantage and financially harm consumers.

52. Tying the scan or fax capabilities of the All-In-One Printers to ink contained in the devices does, however, serve to benefit Defendant.

53. Canon derives substantial profits from the sale of Canon printer ink cartridges.

54. Ink cartridges for the All-in-One Printers retail for approximately $40-50.[20] As such, the cost of ink cartridges amounts to a substantial portion of the cost of the printer housing the cartridges.[21]

---

[20] For example, a pack of color and black ink cartridge refills for the PIXMA TS830 costs $47.99. *See Shop,* CANON, https://shop.usa.canon.com/shop/en/catalog/cli-281-black-cyan-magenta-yellow-4-ink-pack (last visited Oct. 11, 2021). Similarly, a purchase of one black ink cartridge and one color ink cartridge compatible with the PIXMA MX452 costs $43.98. *See Shop,* CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-mx452-compatible-inks (last visited Oct. 11, 2021).

[21] For example, the PIXMA MG2522 currently retails for $98.90. *See* WALMART, https://www.walmart.com/ip/Canon-PIXMA-MG2522-Wired-All-in-One-Color-Inkjet-Printer/108208974 (last visited Oct. 11, 2021).

55.     Charles LeCompte, head of Lyra Research, a market research firm in Newton, Massachusetts stated, "[t]he industry figured out years ago that once people buy a printer they are committed to it, so you can sell the printer at or below cost knowing they will buy the cartridges."[22]

56.     According to a 2018 Consumer Reports article, inkjet printers are being sold at a low cost, with the expectation that companies would make their profit through sales of the ink cartridges needed for the functioning of the machines.[23] "Most printers are sold at a loss. A manufacturer makes money NOT by selling consumers an inkjet or laser printer, but by selling the supplies needed to print."[24] Wing Lam, an associate director of cost benchmarking at IHS Markit stated that "[t]his is a classic razor-and-blade business model where the manufacturer sells the goods at a low price to help increase the sales of accessories, where the money is made."[25]

57.     There is no reason or technical basis for manufacturing the All-in-One Printers with an ink level detection function that causes the scanner to stop functioning when ink is low or empty. Canon designed the All-in-One Printers in such a way to require consumers to maintain ink in their devices regardless of whether they intend to print. The result is an increase in ink sales from which Canon obtains significant profits.[26]

---

[22] Lamont Wood, *Printer ink: Tired of feeding the cash cow?,* COMPUTERWORLD (Mar 28, 2012 6:00 am PST), https://www.computerworld.com/article/2503134/printer-ink--tired-of-feeding-the-cash-cow-.html (last visited Oct. 11, 2021); *see also* Jack Houston and Irene Anna Kim, Why printer ink is so expensive, INSIDER (Updated Mar 2, 2021, 12:09 PM) https://www.businessinsider.com/why-printer-ink-so-expensive-2019-8 ("companies do everything they can to keep you buying official ink cartridges") (last visited on October 11, 2021).

[23] Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a2101590645/ (last visited Oct 11, 2021).

[24] *Why Are Printer Ink and Toner Cartridges So Expensive?*, TONERBUZZ https://www.tonerbuzz.com/blog/why-is-printer-ink-so-expensive/ (last visited on October 11, 2021).

[25] Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a2101590645/ (last visited Oct. 11, 2021).

[26] Upon information and belief, Canon's Office and Business Printers, which retail for significantly more than the All-in-One Printers, do not suffer from the Design Issue. Additionally, Canon's laser printers allow users to scan documents without toner cartridges.

58. The design forces consumers to incur the unexpected and unnecessary burden and expense in the form of ink purchases or in the alternative be unable to scan or fax documents using the so-called all-in-one device.

59. Canon represents that the main functions of the All-in-One Printers include scanning and faxing documents, but fails to disclose to purchasing consumers that the All-in-One Printers suffer from the Design Issue. Only after consumers purchase the All-in-One Printers do they learn that they must maintain ink in their devices in order to scan or fax documents, functionalities that should not require ink.

## CLASS ACTION ALLEGATIONS

60. Plaintiffs Saiz, Rivera, Franco, and Hall bring this action individually and on behalf of the following California subclass:

> All persons residing in California who purchased a Canon All-in-One Printer for personal/household use, at any time within the applicable statute of limitations (the "California Subclass").

61. Plaintiff Leacraft brings this action individually and on behalf of the following New York subclass:

> All persons residing in New York who purchased a Canon All-in-One Printer for personal/household use, at any time within the applicable statute of limitations (the "New York Subclass").

62. Plaintiff Bavaro brings this action individually and on behalf of the following Texas subclass:

> All persons residing in Texas who purchased a Canon All-in-One Printer for personal/household use, at any time within the applicable statute of limitations (the "Texas Subclass").

63. Specifically excluded from the Classes are Canon, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants,

partners, joint venturers, or entities controlled by Canon, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Canon and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

64.     Plaintiffs reserve the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

65.     This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

66.     Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiffs estimate that the Class is comprised of thousands of Class members. The Class is sufficiently numerous to warrant certification.

67.     Typicality of Claims (Rule 23(a)(3)): Plaintiffs, like the other purchasers of the All-in-One Printers, have been subjected to Canon's deceptive and misleading course of conduct, including Canon's failure to disclose material information.  Plaintiffs are members of the Classes and their claims are typical of the claims of the members of the Classes.  The harm suffered by Plaintiffs is similar to that suffered by all other Class members that was caused by the same misconduct by Canon.

68.     Adequacy of Representation (Rule 23(a)(4)): Plaintiffs will fairly and adequately represent and protect the interests of the Class.   Plaintiffs have no interests antagonistic to, nor

in conflict with, the Classes. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

69. Superiority (Rule 23(b)(3)): A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members is relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Canon will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

70. Predominant Common Questions (Rule 23(a)(2)): The claims of all Class members present common questions of law or fact, which predominate over any questions affecting only individual Class members, including:

a. Whether Canon's conduct violates the New York General Business Law § 349;

b. Whether Canon's conduct violates the New York General Business Law § 350;

c. Whether Canon's conduct violates Texas Deceptive Trade Practices and Consumer Protection Act (Tex. Bus. & Com. Code § 17.41, *et seq*.);

d. Whether Canon's conduct violates California's False Advertising Law (Business & Professional Code §§ 17500, *et seq*.);

e. Whether Canon's conduct violates California Consumer Legal Remedies Act (Civil Code §§ 1750, *et seq*.);

f. Whether Canon's conduct violates California Unfair Competition Law (Civil Code §§ 17200, *et seq*.);

g. Whether Canon All-in-One Printers function as a scanner with low or empty ink;

h. Whether Canon failed to disclose material information; and

i. The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Classes are entitled.

71. Information concerning Canon All-in-One Printer sales is available from Canon's books and records or third-party retailer records.

72. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

73. The prosecution of separate actions by individual members of the Classes would run the risk of inconsistent or varying adjudications, and establish incompatible standards of conduct for Canon. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

74. Canon has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

75. Given that Canon's conduct is ongoing, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (On behalf of the New York Subclass against Defendant)

76. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

77. Plaintiff Leacraft brings this count on behalf of himself and all members of the New York Subclass.

78.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

79.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

80.     Plaintiff Leacraft and members of the New York Subclass are consumers who purchased the All-in-One Printers from Defendant for their personal use.

81.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, failing to disclose that the All-in-One Printers were designed in such a way that made them unsuitable and unusable for their intended purpose (*i.e.*, scanning and faxing documents).

82.     Defendant intentionally concealed and omitted material facts regarding the true nature of the All-in-One Printers.

83.     Defendant also falsely represented on product packaging and in advertisements that the All-in-One Printers function as scanners and fax machines under ordinary circumstances.

84.     The foregoing deceptive acts and practices were directed at consumers.

85.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the All-in-One Printers to induce consumers to purchase the same.

86.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

87.     Defendant possessed information about the Design Issue, which was relevant to Plaintiff Leacraft and New York Subclass members, but failed to disclose this information.

88.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

89.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Leacraft and members of the New York Subclass have sustained from having paid for Defendant's All-in-One Printers.

90.     As a result of Defendant's violations, Plaintiff Leacraft and members of the New York Subclass have suffered damages because: (a) they would not have purchased the All-in-One Printers on the same terms, if at all, if they knew that the All-in-One Printers suffered from the Design Issue; and (b) the All-in-One Printers do not have the characteristics, uses, benefits, or qualities as promised.

91.     On behalf of himself and other members of the New York Subclass, Plaintiff Leacraft brings this action to enjoin Defendant's unlawful and deceptive acts or practices and seek to recover their actual damages or fifty dollars, whichever is greater, per violation, three times actual damages, and reasonable attorneys' fees.

## COUNT II

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350
### (On behalf of the New York Subclass against Defendant)

92.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

93.     Plaintiff Leacraft brings this count on behalf of himself and all members of the New York Subclass that purchased an All-in-One Printer.

94.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

95.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

96.     Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

97.     Defendant's false, misleading, and deceptive representations and omissions of fact about the All-in-One Printers were and are directed towards consumers.

98.     Defendant's false, misleading, and deceptive representations and omissions were material and are likely to mislead a reasonable consumer acting reasonably under the customary or usual circumstances.

99.     Defendant's false, misleading, and deceptive representations and omissions have resulted in consumer injury or harm to the public interest.

100.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff Leacraft and the New York Subclass have suffered and continue to suffer economic injury.

101.    As a result of Defendant's violations, Plaintiff Leacraft and members of the New York Subclass have suffered damages because: (a) they would not have purchased the All-in-One Printers on the same terms, if at all, if they knew that the All-in-One Printers suffered from the Design Issue; and (b) the All-in-One Printers do not have the characteristics, uses, benefits, or qualities as promised.

102.    On behalf of himself and other members of the New York Subclass, Plaintiff Leacraft seeks to recover actual damages or five hundred dollars, whichever is greater for each violation, three times actual damages, and reasonable attorneys' fees.

## COUNT III

## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT (Tex. Bus. & Com. Code § 17.41, *et seq*.)

**(on behalf of the Texas Subclass against Defendant)**

103. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

104. Plaintiff Bavaro brings this count on behalf of herself and all members of the Texas Subclass that purchased an All-in-One Printer.

105. Plaintiff Bavaro and the Texas Subclass members are "consumers" as defined by Tex. Bus. & Com. Code § 17.45(4).

106. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to consumers where the consumer suffers economic damage as the result of the use of false, misleading, or deceptive acts or practices specifically enumerated in Tex. Bus. & Com. Code § 17.46(b).

107. The Texas DTPA declares several specific actions to be false, misleading, or deceptive, including: (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (9) advertising goods or services with intent not to sell them as advertised; (13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service; and (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction

into which the consumer would not have entered had the information been disclosed. Bus. & Com. Code § 17.46.

108.    Defendant engaged in false, misleading, or deceptive acts by employing deception, deceptive acts or practices, misrepresentations, or concealment, suppression, or omission of material facts about the nature of the All-in-One Printers with intent that others rely upon such misrepresentations, concealment, suppression, or omission, in connection with the sale of its All-in-One Printers.

109.    Defendant's false, misleading, or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Bavaro and the Texas Subclass members, about the nature of the All-in-One Printers.

110.    Defendant also engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

111.    By the acts and conduct alleged herein, Defendant engaged in false, misleading, or deceptive acts and practices, which include, without limitation, failing to disclose that the All-in-One Printers were designed in such a way that made them unsuitable and unusable for their intended purpose (*i.e.*, scanning and faxing documents).

112.    Defendant also falsely represented on product packaging and in advertisements that the All-in-One Printers function as scanners and fax machines under ordinary circumstances.

113.    Defendant intentionally and knowingly misrepresented and omitted material facts regarding All-in-One Printers with intent to mislead Plaintiff Bavaro and the Texas Subclass.

114.     Defendant knew or should have known that its conduct violated the Texas DTPA.

115.     Defendant owed Plaintiff Bavaro and the Texas Subclass a duty to disclose the truth about the nature of the All-in-One Printers, because Defendant:

     a.     Possessed knowledge about the nature of the All-in-One Printers;

     b.     Intentionally concealed the foregoing from Plaintiff Bavaro and the Texas Subclass; and/or

     c.     Made incomplete and misleading representations that its All-in-One Printers could scan and fax while purposefully withholding material facts from Plaintiff Bavaro and the Texas Subclass that contradicted these representations.

116.     Canon's omissions and/or misrepresentations were misleading in a material way because they fundamentally misrepresented the characteristics and quality of the All-in-One Printers to induce consumers to purchase the same.

117.     Plaintiff Bavaro and the Texas Subclass suffered ascertainable loss caused by Canon's misrepresentations and its concealment of and failure to disclose material information. Plaintiff Bavaro and the Texas Subclass would not have purchased the All-in-One Printers on the same terms, if at all, if they knew that the All-in-One Printers suffered from the Design Issue.

118.     Canon had an ongoing duty to its customers to refrain from unfair and deceptive practices under the Texas DTPA. As a direct and proximate result of Canon's violations of the Texas DTPA, Plaintiff Bavaro and the Texas Subclass have suffered injury-in-fact and actual damages.

119.    Defendant was given formal notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning its wrongful conduct as alleged herein by Plaintiff Bavaro and absent Texas Subclass members. That notice, in the form of a pre-suit demand letter, was delivered on May 6, 2022, during the 14-day period provided by this Court for Plaintiff Leacraft to amend his complaint. The May 6, 2022 letter notified Canon of the same wrongdoing and same factual underpinning that Mr. Leacraft set forth in his August 12, 2021 pre-suit demand letter, which, as of this filing, afforded Canon nine months to engage in meaningful discussions to either resolve the claim or provide information to refute the claim. Pre-suit notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 was, therefore, unnecessary because Defendant was already well-informed and on notice of the allegedly unfair and unlawful conduct as described herein since August 12, 2021 when Canon was first notified of Plaintiff Leacraft's claim, and has yet to offer any remedy in accordance with a similar consumer protection statute. Plaintiffs nevertheless sent Canon a letter notifying it of Plaintiffs' intention to add this claim to the Amended Complaint. Plaintiffs did not wait to file this Amended Complaint since Canon has been on direct notice of the claims at issue for nine months. Plaintiffs could not delay the filing of this Amended Complaint in light of the Court's order that it be filed within fourteen days of the Court's April 28, 2022 Order.

120.    On May 12, 2022, a copy of this complaint was mailed to the Attorney General of the State of Texas in accordance with Tex. Bus. & Com. Code § 17.501.

121.    Plaintiff Bavaro and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the Court deems proper.

## COUNT IV

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**

**Business & Professional Code §§ 17500, *et seq.***

**(on behalf of the California Subclass against Defendant)**

122. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

123. Plaintiffs Saiz, Rivera, Franco, and Hall (the "California Plaintiffs") bring this count on behalf of themselves and all members of the California Subclass.

124. California's False Advertising Law ("FAL"), (Bus. & Prof. Code §§ 17500, *et seq*.) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

125. Defendant committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of its All-in-One Printers, as described above, including but not limited to, representing that the devices would function as scanners and fax machines under ordinary circumstances and failing to disclose to purchasing consumers that the All-in-One Printers suffer from the Design Issue

126. Defendant's representations were likely to deceive, and did deceive, the California Plaintiffs and reasonable consumers.

127. Defendant knew or should have known, through the exercise of reasonable care that its statements and omissions relating to the All-in-One Printers were untrue and misleading.

128. Defendant's misrepresentations were intended to induce reliance, and the California Plaintiffs saw, read and reasonably relied on them when purchasing the All-in-One Printers. Defendant's misrepresentations were a substantial factor in the California Plaintiffs' purchase decisions.

129. In addition, reliance can be inferred because Defendant's misrepresentations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the All-in-One Printers.

130. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to the California Plaintiffs.

131. As a direct and proximate result of these acts, consumers have been and are being harmed. California Plaintiffs and members of the California Subclass have suffered injury and actual out-of-pocket losses because: (a) they would not have purchased the All-in-One Printers on the same terms, if at all, if they knew that the All-in-One Printers suffered from the Design Issue; and (b) the All-in-One Printers do not have the characteristics, uses, benefits, or qualities as promised.

132. California Plaintiffs bring this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein. California Plaintiffs and members of the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of the California Plaintiffs' attorneys' fees and costs.

**<u>COUNT V</u>**

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (“CLRA”) Civil Code §§ 1750, *et seq.***

**(on behalf of the California Subclass against Defendant)**

133. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

134. The California Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

135. The California Plaintiffs and the other members of the California Subclass are “consumers,” as the term is defined by California Civil Code § 1761(d).

136. The California Plaintiffs, the other members of the California Subclass, and Defendant have engaged in “transactions,” as that term is defined by California Civil Code § 1761(e).

137. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

138. As alleged more fully above, Defendant violated the CLRA by falsely representing on product packaging and in advertisements that the All-in-One Printers function as scanners and fax machines under ordinary circumstances, and failing to disclose that the All-in-One Printers were designed in such a way that made them unsuitable and unusable for their intended purpose (*i.e.*, scanning and faxing documents).

139. As a result of engaging in such conduct, Defendant has violated California Civil Code §1770(a)(5), (a)(7), and (a)(9).

140.    Defendant's representations and omissions were likely to deceive, and did deceive, the California Plaintiffs and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements and/or omissions were inaccurate and misleading.

141.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the All-in-One Printers to induce consumers to purchase the same.

142.    The foregoing deceptive acts and practices were intended to induce reliance, and the California Plaintiffs saw, read and reasonably relied on them when purchasing All-in-One Printers. The foregoing deceptive acts and practices were a substantial factor in the California Plaintiffs' purchase decisions.

143.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to the California Plaintiffs.

144.    Defendant owed the California Plaintiffs and the California Subclass a duty to disclose the truth about the nature of the All-in-One Printers because the information withheld relates to the central functions of the All-in-One Printers.  Specifically, Defendant failed to disclose that the All-in-One Printers were designed in such a way that made them unsuitable and unusable for their intended purpose (*i.e.*, scanning and faxing documents) when the devices have low or empty ink cartridges.

145.     Defendant possessed knowledge about the nature of the All-in-One Printers and intentionally concealed the foregoing from the California Plaintiffs and the California Subclass.

146.    The California Plaintiffs and California Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the All-

in-One Printers on the same terms, if at all, if they knew that the All-in-One Printers suffered from the Design Issue; and (b) the All-in-One Printers do not have the characteristics, uses, benefits, or qualities as promised.

147. Accordingly, pursuant to California Civil Code § 1780(a), the California Plaintiffs, on behalf of themselves and all other members of the California Subclass, seek injunctive relief and all monetary relief allowed under the CLRA.

148. Defendant was given formal notice pursuant to CLRA § 1782 concerning its wrongful conduct as alleged herein by the California Plaintiffs and absent California Subclass members. That notice, in the form of a pre-suit demand letter, was delivered on May 6, 2022, during the 14-day period provided by this Court for plaintiff Leacraft to amend his complaint. The May 6, 2022 letter notified Canon of the same wrongdoing and same factual underpinning that Mr. Leacraft set forth in his August 12, 2021 pre-suit demand letter, which, as of this filing, afforded Canon nine months to engage in meaningful discussions to either resolve the claim or provide information to refute the claim. Pre-suit notice pursuant to CLRA § 1782 was, therefore, unnecessary because Defendant was already well-informed and on notice of the allegedly unfair and unlawful conduct as described herein since August 12, 2021 when Canon was first notified of Plaintiff Leacraft's claim, and has yet to offer any remedy in accordance with a similar consumer protection statute. Plaintiffs nevertheless sent Canon a letter notifying it of Plaintiffs' intention to add this claim to the Amended Complaint. Plaintiffs did not wait to file this Amended Complaint since Canon has been on direct notice of the claims at issue for nine months. Plaintiffs could not delay the filing of this Amended Complaint in light of the Court's order that it be filed within fourteen days of the Court's April 28, 2022 Order.

## COUNT VI

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

**Business & Professional Code §§ 17200, *et seq*.**

**(on behalf of the California Subclass against Defendant)**

149. Plaintiffs incorporate by reference and re-allege each and every factual allegation set forth above as though fully set forth herein.

150. Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq*.

151. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria (unlawful, unfair, or fraudulent) to be considered a violation of the statute.

152. Defendant has violated the UCL's "unlawful prong" as a result of its violations of state consumer protection statutes, as described herein.

153. "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *CelTech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted). Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1383 (2012).

154. Throughout the Class Period, Defendant also committed acts of unfair competition, as defined by § 17200, by using false and misleading statements and omissions to promote the sale of the All-in-One Printers, as described above.

155. Defendant's misrepresentations and other conduct, described herein, violated the

"unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to California Plaintiffs and members of the California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

156. Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the All-in-One Printers will function as scanners and fax machines under ordinary circumstances. Defendant's practice of injecting misinformation into the marketplace about the functions of its All-in-One Printers, and omitting material facts relating thereto, is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about its products. Taking advantage of that trust, Defendant misrepresents the characteristics and qualities of its All-in-One Printers.

157. Defendant's also engaged in fraudulent acts or practices by concealing and/or failing to disclose material facts to the California Plaintiffs and California Subclass members, including but not limited representing that the All-in-One Printers will function as scanners and fax machines under ordinary circumstances and failing to disclose that the All-in-One Printers were designed in such a way that made them unsuitable and unusable for their intended purpose (*i.e.*, scanning and faxing documents) when the devices have low or empty ink cartridges. These representations and omissions were likely to deceive members of the public.

158. The California Plaintiffs and members of the California Subclass are not sophisticated experts with independent knowledge of how printers and scanners function, and they acted reasonably when they purchased the products based on their belief that Defendant's representations were true.

159. Defendant knew or should have known, through the exercise of reasonable care, that its representations and omissions about the All-in-One Printers were untrue and misleading.

160. As a direct and proximate result of these acts, consumers have been and are being harmed. The California Plaintiffs and members of the California Subclass have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) California Plaintiffs and members of the California Subclass would not have purchased the All-in-One Printers on the same terms, if at all, if they knew that the All-in-One Printers suffered from the Design Issue; and (b) the All-in-One Printers do not have the characteristics, uses, benefits, or qualities as promised.

161. Pursuant to California Business & Professions Code §17203, California Plaintiffs and members of the California Subclass are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representatives of the Classes and their counsel as Class Counsel;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For damages in amounts to be determined by the Court and/or jury

(e) An award of statutory damages or penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief; and

(h) Such other and further relief as the Court deems necessary and appropriate.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated: May 12, 2022

**LEVI & KORSINSKY, LLP**

By: s/ *Mark S. Reich*__________
Mark S. Reich
Courtney E. Maccarone
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
cmaccarone@zlk.com

*Counsel for Plaintiffs*